IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANIEL WAYNE CLAY,

Plaintiff,

v.                                          No. 13-2240-SAC

UNITED PARCEL SERVICE, INC.,

Defendant.

MEMORANDUM AND ORDER

This employment discrimination case comes before the Court on Defendant's motion to dismiss Plaintiff's amended complaint for failure to state a claim and for lack of jurisdiction. Plaintiff, acting pro so, opposes the motion.

## I. Motion to Dismiss Standards

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's ... complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). The court accepts all well-pled factual allegations as true and views these allegations in the light most favorable to the nonmoving party. *United States v. Smith*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 130 S.Ct. 1142 (2010). The court, however, is not under a duty to accept

legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884 (2009). "Thus, mere 'labels and conclusions' and 'formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 2012 WL 364058, at *2 (10th Cir. Feb. 6, 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Supreme Court recently clarified the requirement of facial plausibility:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to

determine whether Plaintiff has set forth a plausible claim." *Khalik*, 2012 WL 364058, at *3 (citations omitted).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Nonetheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico,* 113 F.3d 1170, 1173–74 (10th Cir. 1997).

**Matters Outside the Pleading**

In evaluating a Rule 12(b)(6) motion to dismiss, the court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). But in considering the complaint in its entirety, the Court also examines documents "incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and documents attached to the complaint, *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) (quotations and citations omitted). Plaintiff has attached a number of documents to his Amended Complaint, including his original complaint, grievance forms, his EEOC charge and notice of right

3

to sue, and various notes. In deciding this motion, the Court considers all attachments to be part of the complaint. *See Rosenfield,* 681 F.3d at 1189.

## II. Facts

Neither party has set forth a coherent chronology of the crucial events during Plaintiff's employment which give rise to this case. Accordingly, the court merely offers a summary gleaned from the pleadings. Defendant initially hired Plaintiff in January of 2004 as a utility worker, and Plaintiff stayed in that position throughout his employment. Defendant discharged and reinstated Plaintiff one or more times before finally discharging Plaintiff on March 12, 2013 for the stated reason that he violated Defendant's Workplace Violence policy. Defendant found that Plaintiff had a verbal altercation and threated a coworker in the employee parking lot on March 8, 2013, so discharged Plaintiff pursuant to Article 17(i) of Defendant's Supplemental Agreement with the Central Region of Teamsters. That article generally prohibits Defendant from discharging an employee without first issuing a warning letter and providing a hearing, subject to certain enumerated exceptions and to subsection (i) - a catch-all exception for "other serious offenses."

The Court takes judicial notice[1] of the facts included in the following interpretation of 17(i) by Shawnee County Judge Hendricks, who examined it when Plaintiff sought unemployment benefits after Defendant discharged him in September of 2012 pursuant to that subsection.

> Article 17 of the Supplemental Agreement is designed to ensure that employees are not discharged before receiving "a warning letter of a complaint." Article 17 also sets out several exceptions to this general provision, which include specific conduct that is so severe and offensive that an immediate discharge is appropriate. Some of these exceptions include taking money from the company, consuming alcohol or narcotics during the workday, and gross negligence resulting in a serious accident. Therefore, the catch-all exception listed in subsection (i) of Article 17, "other serious offenses," which is cited to as the reason for Mr. Clay's discharge, refers to other conduct so severe that to merely issue a warning would not be sufficient to ensure the safety of the company's employees and business operations.

*Clay v. Kansas Employment Sec. Bd. of Review*, Dk. 28, p. 17.

Plaintiff filed an EEOC charge the day after his March 12, 2013 termination, complaining of race discrimination, sex discrimination, and retaliation, and the EEOC swiftly noticed Plaintiff of his right to sue. Plaintiff timely filed this lawsuit. His amended complaint seeks damages and an injunction for Defendant's alleged violation of Title VII, 42 USC § 1981, and Kansas state law. Plaintiff alleges Defendant discriminated against him based on his race (African American) and sex and retaliated against him by terminating his employment because of his complaints about discrimination.

---

[1] A court may take judicial notice of facts which are a matter of public record, *Tal v. Hogan,* 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006), and of state court documents. *Pace v. Swerdlow,* 519 F.3d 1067, 1072–73 (10th Cir. 2008). Additionally, this state court document relates to these parties and is attached to Plaintiff's response to Defendant's present motion. *See* Dk. 28, p. 13-20.

## III. Exhaustion of Administrative Remedies

"Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII." *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (internal quotation marks omitted). The Plaintiff bears the burden to establish the court's subject-matter jurisdiction. *See Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003). "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007), quoting *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). Thus, to exhaust administrative remedies, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[, because] each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Manning v. Blue Cross and Blue Shield of Kansas City*, 522 Fed.Appx. 438 (10th Cir. 2013), quoting *Jones v. UPS, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotation marks omitted). The Court liberally construes charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim. *Jones*, 502 F.3d at 1186.

The Court has an independent duty to examine whether it has subject matter jurisdiction, and such jurisdiction is lacking when a Title VII plaintiff

has not exhausted administrative remedies. *Manning*, 522 Fed. Appx. at

441. *See Shikles v. Sprint/United Mgmt. Co.,* 426 F.3d 1304, 1317 (10th Cir.

2005) (holding that exhaustion of administrative remedies is a jurisdictional

prerequisite to suit under the ADEA and Title VII).

### EEOC Charge

Plaintiff's EEOC charge alleges retaliation, and discrimination based on

race and sex. Its narrative section states only the following:

> I was employed January 12, 2004, through March 12, 2013, working as a Utility Worker.
> Since my return to work on January 21, 2013, I have been subjected to racial discrimination based on comments made to me or that I have heard. I also made complaints against my supervisor for a writes (sic) he issued to me for insubordination.
> I was sexually harassed in September of 2012, by a coworker when I was pulling a trailer into the bay. He made a comment about his "Dick" being long and I reported it to Management. Management took no action based on my complaint.
> On March 12, 2013, I was discharged for a violation of the Code of Conduct "Workplace Violence."
> I was subjected to sexual harassment, racial comments and discharged in retaliation for my previous complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

Amended Complaint, Dk. 24, p.46. This latter sentence is wholly conclusory

and adds no factual basis to the charge.

## IV. Federal Claims

Plaintiff brings various federal claims under Title VII and 42 USC §

1981.

## A. Racial Termination

### 1. Title VII

The sole allegation in Plaintiff's EEOC charge relevant to termination is that on a specific date, Plaintiff "was discharged for a violation of the Code of Conduct "Workplace Violence." Even if one liberally construes this language to refer to the given reason for Plaintiff's discharge instead of to the agreed reason for it, no facts included in Plaintiff's EEOC charge would reasonably lead the EEOC to investigate a claim of race-based termination. This Court therefore lacks jurisdiction over Plaintiff's Title VII termination claim.

### 2. § 1981

Section 1981 contains no exhaustion requirement, and applies to claims of racial termination. The Court thus examines Defendant's contention that the complaint fails to state a claim. Although the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in his complaint, examining the complaint in light of the elements of each alleged cause of action helps the Court determine whether Plaintiff has set forth a plausible claim. *Khalik,* 671 F.3d at 1192.

In racial discrimination suits brought under § 1981 or Title VII, the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas. Drake v. City of Fort Collins,* 927 F.2d 1156, 1162 (10th Cir. 1991). To make a prima facie case of racial termination absent direct evidence, a plaintiff must generally demonstrate:

(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). An inference of discrimination may be shown in various ways, including "actions or remarks made by decisionmakers," "preferential treatment given to employees outside the protected class," or "the timing or sequence of events leading to plaintiff's termination." *Plotke v. White,* 405 F.3d 1092, 1101 (10th Cir. 2005).

Defendant alleges that the amended complaint fails to include any facts supporting a claim of racial termination. But the Court reads the amended complaint to allege that he was terminated in 2013 because of a verbal altercation with a white co-worker but that co-worker was not terminated, that the workplace violence policy or Article 17(i) was applied more stringently to him than to persons of other races, and that the altercation leading to his termination occurred in the parking lot. Dk. 24, p. 29. This latter fact is relevant because Plaintiff had earlier complained that he considered a confederate flag license plate on an employee's car in the parking lot to be racist, but management responded by saying Defendant's authority to discipline did not extend to the parking lot. These and other assertions in the amended complaint are sufficient, when read in the light

most favorable to the Plaintiff, to state a facially plausible claim of racial termination under § 1981.

Defendant contends that Plaintiff has not shown that the white employee involved in the verbal altercation which led to Plaintiff's termination was similarly situated to the Plaintiff, but that issue is more appropriately addressed in this case at the summary judgment stage.

**B. Failure to Promote**

### 1. Title VII

Defendant notes that Plaintiff's failure to promote claim was not included in Plaintiff's EEOC charge, so contends that it fails to meet the administrative exhaustion requirement of Title VII. The Court agrees. Nothing in Plaintiff's EEOC charge would reasonably have triggered an EEOC investigation of Plaintiff's failure to promote claim. This Title VII claim is thus dismissed for lack of jurisdiction.

### 2. § 1981

Failure to promote claims are actionable under § 1981 only when the promotion would have resulted in a "new and distinct relation between the employee and the employer." *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377. Defendant does not contend that Plaintiff's failure to promote claim is not actionable, but alleges that Plaintiff's claim of racial failure to promote is wholly conclusory and without factual basis.

But the Amended Complaint does include some facts relative to this claim. A grievance alleges that on or about August 8, 2006, Mr. Ables took Plaintiff out of training without having given him 120 days to qualify, in violation of an alleged provision that utility employees shall have a 120-day training program to qualify as a "trailer repair person." Dk. 24, p. 38. Plaintiff argues in his brief that Mr. Ables conditioned Plaintiff's continued employment as a utility employee on Plaintiff's agreement never to train as a repairman, and this allegedly precluded Plaintiff's subsequent chances for promotion. Dk. 28, p. 11.

This failure-to-promote claim about events occurring in 2006 raises the issue of timeliness. Section 1981 does not provide a specific statute of limitations, but cases hold that either a two-year or a four-year limitations applies. *See Brown v. Unified Sch. Dist. No. 501,* 465 F.3d 1184, 1188 (10th Cir. 2006) (holding two-year statute of limitations for personal injury actions in K.S.A. § 60–513(a) applies to civil rights claims under 42 U.S.C. § 1981).

> [C]laims under § 1981 relying upon discrimination in *contract formation,* which were actionable prior to the 1991 amendment, would be governed by residual state statutes of limitations.... Claims relying upon an employer's *post-formation conduct,* however, would be subject to the four-year statute of limitations under § 1658, because they were made possible by the 1991 amendment.

*Cross v. Home Depot,* 390 F.3d 1283, 1288 (10th Cir. 2004) (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 177–78, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). Plaintiff's lawsuit was filed in 2013, far beyond even a four-year statute of limitations, so is untimely.

Even if one assumes that the negative effects of the 2006 event continued through the date of his 2013 termination, Plaintiff's claim is not rendered timely because the continuing violation theory does not apply to § 1981 claims. *Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1193 n. 2 (10th Cir. 2002), citing *Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1514 (10th Cir.), *cert. denied,* 522 U.S. 1028 (1997). Plaintiff's § 1981 claim for failure to promote shall therefore be dismissed as untimely.

But even if the merits of this claim were properly before the Court, no facially plausible claim is stated. To establish a prima facie case for failure to promote, the plaintiff must demonstrate (1) he was a member of a protected class; (2) he applied for and was qualified for the position; (3) despite being qualified he was rejected; and (4) after he was rejected, the position was filled by someone outside the protected class. *MacKenzie v. City and County of Denver,* 414 F.3d 1266, 1278 (10th Cir. 2005). Plaintiff's pleading fails to allege that Abel's decision was based on Plaintiff's race or other protected class and creates no inference of illegal failure to promote.

### C. Disparate Impact

Plaintiff's brief alleges that the members of the grievance board are all white employees of the labor department, that the grievance process negatively impacts minority employees because African-American employees prevail less often than do Caucasian employees, and that the process for selection of members of the grievance board is discriminatory.

### 1. Title VII

Plaintiff's EEOC charge never mentions this claim or lays out any factual predicate for any claim of disparate impact. Accordingly, this court lacks jurisdiction to entertain this Title VII claim. *See Leo v. Garmin Intern., Inc.*, 431 Fed.Appx. 702 (10th Cir. 2011) (affirming dismissal of disparate impact claim for failure to exhaust; finding amendment to restate claims for disparate impact would be futile).

### 2. § 1981

Section 1981 requires purposeful discrimination so does not apply to disparate impact claims that do not raise a presumption of such a discriminatory purpose. *Drake v. City of Fort Collins,* 927 F.2d 1156, 1162 (10th Cir. 1991). *See New Mexico ex rel. Candelaria v. City of Albuquerque,* 768 F.2d 1207, 1209 (10th Cir. 1985). Plaintiff's disparate impact claim about the selection and composition of the grievance board raises no such presumption, so is not actionable under § 1981. This claim must be dismissed.

## D. Hostile Work Environment

### 1. Title VII

The Court liberally construes the EEOC charge to adequately include a claim for hostile work environment based on sex and race. *See Hunt v. Riverside Transp., Inc.*, __ Fed.Appx.__, 2013 WL 4750764 (10th Cir. 2013). Although the details in the EEOC charge are scant, they are arguably

sufficient to put the EEOC on notice that Plaintiff intended to state a claim of prohibited racial harassment, warranting its investigation of such a claim.

## 2. Title VII/1981

Racial harassment is actionable under § 1981 after the 1991 revisions to that statute. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836 (2004). Sexual harassment is actionable under Title VII but not under § 1981.[2] *Runyon v. McCrary*, 427 U.S. 160, 96 S .Ct. 2586 (1976).

Title VII and § 1981 proscribe employment practices that "permeate the workplace with 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Tademy v. Union Pacific Corp.*, 520 F.3d 1149, 1156 (10th Cir. 2008) (internal citation and quotation omitted). The plaintiff must demonstrate that the work environment was objectively and subjectively offensive, but need "not demonstrate psychological harm, nor … show that her work suffered as a result of the harassment." *Walker v. United Parcel Serv. of Am.*, 76 Fed.Appx. 881, 885 (10th Cir. 2003). The Court examines all the circumstances in determining if an environment is objectively hostile, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

_____

[2] 42 USC § 1981 provides in part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens …"

whether it unreasonably interferes with an employee's work performance."

*Faragher v. City of Boca Raton,* 524 U.S. at 787–88, 118 S.Ct. 2275

(quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. at 21, 114 S.Ct. 367)

(internal citations and quotations omitted).

"Conduct that is not severe or pervasive enough to create an

objectively hostile or abusive work environment-an environment that a

reasonable person would find hostile or abusive-is beyond Title VII's

purview." *Harris,* 510 U.S. at 21. Similarly, harassment that is not racial or

does not stem from animus based on a protected class is not prohibited. *See*

*Chavez v. New Mexico,* 397 F.3d 826, 831–32 (10th Cir. 2005). Thus Title

VII provides no remedy for boorish behavior or bad taste*. Duncan v.*

*Manager, Dept. of Safety, City & County of Denver,* 397 F.3d 1300, 1313-14

(10th Cir. 2005). So incidents spread out over many years which indicate

mostly poor taste and lack of professionalism usually do not rise to the level

of a hostile work environment. *See, e.g., Penry v. Federal Home Loan Bank*

*of Topeka,* 155 F.3d 1257, 1263 (10th Cir. 1998).

Plaintiff's amended complaint recites the following: 1) a coworker

referred to the his own genitalia in September of 2012; 2) Plaintiff often

overheard racial slurs on the radio; 3) a coworker told him a joke that used

racially offensive terms; 4) Plaintiff complained about a coworker's

confederate flag license plate but management told Plaintiff he could put a

black panther sticker on his own car and did not ask the coworker to remove

his license plate; and 5) management said Plaintiff was a sick person during the grievance hearing about the license plate.[3]

In determining the pervasiveness of the harassment, the court may aggregate evidence of racial hostility with evidence of sexual hostility. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987). Further, the Court considers not only specific hostility targeting Plaintiff, but also the general work atmosphere. *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 925 (10th Cir. 2001). In light of the law, the Court finds that although none of the alleged acts is severe, the complaint is sufficient in its allegations of arguably pervasive conduct to state a plausible claim for racial, but not for sexual, harassment.

Defendant additionally contends that no basis for employer liability has been established and that it acted in "good faith" in responding to Plaintiff's complaints about the license plate. But the Court cannot decide an issue of "good faith" on the scant facts presented by the parties on this motion. And Plaintiff alleges he complained to his supervisor, and Defendant concedes its knowledge of the license plate complaint, making employer liability facially plausible.

---

[3] Contrary to Plaintiff's belief, none of these statements constitutes direct evidence of racial discrimination. "Direct evidence is evidence which, if believed, resolves a matter in issue." *United States v. Cardinas Garcia,* 596 F.3d 788, 796-97 (10th Cir. 2010). Direct evidence must "show a specific link between the alleged discriminatory animus and the challenged decision." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343 (2009).

### E. Retaliation

Plaintiff alleges in his amended complaint that he was terminated because of his previous complaints about racial discrimination. Dk. 24, p. 29. His 2013 EEOC charge alleges he was "discharged in retaliation for [his] previous complaints of discrimination in violation of Title VII." Dk. 24, p. 46. Some of Plaintiff's previous complaints are included in an EEOC charge Plaintiff filed on April 2, 2011, attached to his amended complaint. That charge alleges racial harassment, racial discharge, and retaliation for complaining about racial discrimination. Dk. 24, p. 47.

#### 1. Title VII

Plaintiff's EEOC charge is wholly conclusory in its explanation of retaliatory termination, alleging solely that Plaintiff was "discharged in retaliation for [his] previous complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended." No facts are offered which would make such a claim plausible. Accordingly, Plaintiff's Title VII claim is dismissed for Plaintiff's failure to exhaust his administrative remedies.

#### 2. § 1981

Section 1981 encompasses employment-related retaliation claims. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 128 S.Ct. 1951 (2008). Thus retaliation for complaints of race discrimination is prohibited under § 1981. The test for establishing a prima facie case for retaliation is the same under Title VII as under 42 U.S.C. § 1981. *Argo v. Blue Cross & Blue Shield of*

*Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. The Court finds it unnecessary at this point to determine what causal standard applies to § 1981 retaliation claims. *See generally University of Texas Southwestern Medical Center v. Nassar*, ___ US ___, 133 S.Ct. 2517 (2013) (holding Title VII status-based discrimination claims require only that one's protected status be a motivating factor in the employer's decision, but Title VII retaliation claims must be proved according to traditional principles of but-for causation). Although § 1981 claims generally apply the same prima facie tests as do Title VII, see *Drake,* 927 F.2d at 1162, the *Nassar* majority in reaching its causation ruling found § 1981's retaliation provision significantly different from Title VII's retaliation provision. *See Nassar*, 133 S.Ct. at 2529-32 (alluding to § 1981 as a "broadly worded" and" undifferentiated" antidiscrimination statute, unlike Title VII's detailed statutory scheme; implying that motivating-factor causation may remain appropriate for § 1981 retaliation claims.)

Defendant contends that Plaintiff's complaint fails to allege who terminated Plaintiff and whether that person knew of plaintiff's reports of discrimination. In his response brief, Plaintiff states the following:

Plaintiff did demonstrate a relationship between the person who Plaintiff complained against and person who terminated Plaintiff. Management at trailer shop where Plaintiff works is is one team, 3 managers. Plaintiff deals have Defendant Francis, Leone, Johnson, and Snell all complete the team of management at Plaintiffs place of employment. Plaintiff complained to Francis about sexual harassment on 09/06/2012, Plaintiff was terminated. Plaintiff came back to work on 01/21/2013, Plaintiff came to Defendant Francis again about Sexual Harassment complaint, On 01/21/2013 Plaintiff was written up by Defendant Francis for insubordination, the charge was later thrown out at local hearing. Plaintiff was terminated by Defendant Francis on 03/12/2013; Plaintiffs termination was retaliation, by Defendant Francis.

Dk. 28, p. 11 (reproduced verbatim).

Although the dates of the events are not clear, this response alleges that manager Francis terminated Plaintiff in close proximity to and in retaliation for Plaintiff's complaints about sex discrimination (harassment). But sex discrimination is not protected under § 1981, see *Runyon,*, 427 U.S. 160, and none of this factual detail is provided in Plaintiff's Amended Complaint. Thus Plaintiff's complaint fails to state a plausible claim of retaliation under § 1981 and any amendment would be futile.

## V. State Law Claims

Liberally read, Plaintiff's amended complaint appears to include state law claims for wrongful termination, breach of contract, negligent supervision, and intentional interference with a contract. Defendant contends that each of these claims is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because determining Plaintiff's claims requires interpretation of a Collective Bargaining Act. *See Garley v. Sandia*

*Corp.,* 236 F.3d 1200, 1209 (10th Cir. 2001) (noting that § 301 preempts state law claims when the court must interpret the CBA).

### A. § 301 LMRA Preemption

Section 301 of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). This section governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective bargaining agreement." *Electrical Workers v. Hechler,* 481 U.S. 851, 859, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)). Thus a state law claim is preempted by federal law "when resolution of [that] claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). A claim will also be preempted if it is "inextricably intertwined with consideration of the term of the labor contract." *Lueck,* 471 U.S. at 213. In other words, contract interpretation, and therefore, Section 301 preemption occurs where "the right asserted" is "derive[d] from the contract." (*Id.* at 218).

### B. Wrongful Termination

Plaintiff alleges that Defendant wrongfully terminated him by using the "catch all" exception to the standard process. Dk. 24, p. 8. Plaintiff contends that this exception applies only to conduct which is so serious as to require immediate termination to protect Defendant's business or employees. Because Defendant waited from the 8th to the 12th to terminate him, his conduct did not fit this mold.

Examining what Plaintiff's circumstances were, whether 17(i) was properly applied to Plaintiff's circumstances, and how 17(i) had been applied to others in the past would involve interpreting the CBA. This state law claim is therefore preempted by the LMRA.

### C. Breach of Contract

Plaintiff additionally alleges that Defendant breached its agreements to provide a fair, impartial and unbiased grievance process to discharged employees, to terminate employees only for cause, to have a union steward present during investigations, and to give written notice to the union before discharging an employee. Dk. 24, p. 16-18. The alleged source of each of these duties is the CBA. Because these state-law claims cannot be resolved without interpreting the agreement itself, they are preempted by the LMRA.

### D. Agreement to Provide a Harassment-free Workplace

Plaintiff also alleges that Defendant breached its agreement to provide a harassment-free workplace. The source of that alleged agreement is not

the CBA, but Defendant's Professional Conduct and Anti-Harassment Policy, which Plaintiff signed upon of his initial employment with Defendant. This claim is unrelated to the CBA so is not preempted by it. Nor is this claim preempted by Title VII, even if this claim is based on the same facts as Plaintiff's harassment claim under Title VII. *See Visor v. Sprint/United Management Co.*, 965 F.Supp. 31 (D.Colo. 1997).

Nonetheless, this claim is precluded by the alternative remedies doctrine. "The general rule is that when the reasons pled for an employee's termination violate federal public policy, no state cause of action is pled." *Adair v. Beech Aircraft Corp.*, 1991 WL 97610, 22 n. 8 (D.Kan. 1991); *See Morriss v. Coleman Co., Inc.*, 241 Kan. 501, 512–13 (1987) (citing *Murphy v. City of Topeka*, 6 Kan.App.2d 488 (1981)). *See also Smitley v. Cigna Corp.*, 640 F.Supp. 397, 401 (D.Kan.1986).

> The alternative remedies doctrine at issue here, referenced sometimes as preclusion, is a substitution of law concept. Under the alternative remedies doctrine, a state or federal statute would be substituted for a state retaliation claim if the substituted statute provides an adequate alternative remedy.

*Flenker v. Willamette Industries, Inc.*, 266 Kan. 198, 202–03 (1998). Thus where a state or federal statute provides an adequate alternative remedy, state common law claims based on the same prohibited acts are precluded. *See Polson v. Davis*, 895 F.2d 705, 709 (10th Cir. 1990); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997).

Plaintiff's claim that Defendant breached its agreement to provide a harassment-free workplace is premised on the same underlying facts that form the basis of his harassment claims under Title VII and § 1981. In *Flenker*, the Kansas Supreme Court explicitly referenced Title VII as an adequate statutory scheme. 967 P.2d at 303. Similarly, the Tenth Circuit has held that the KAAD "provides an adequate and exclusive state remedy for violations of the public policy enunciated therein." *Polson*, 895 F.2d at 709–10. The Court finds that Title VII and the KAAD provide plaintiff an adequate substitute for this state common law remedy. *See Daniels v. United Parcel Service, Inc.,* 797 F.Supp.2d 1163, 1196–97 (D.Kan. 2011) (finding implied contract claim barred because it was based on the same retaliation alleged under Title VII, the ADEA, the KAAD, and the KADEA, which all provided an adequate remedy). Accordingly, this state-law claim for breach of contract is precluded.

But even if the Court were to reach the merits of this claim, it would find the Amended Complaint fails to state a claim. Defendant's Professional Conduct and Anti-Harassment Policy, which Plaintiff signed upon of his initial employment with Defendant, does not constitute an enforceable contract under Kansas law, which this Court applies to such claims. See *Getz v. Board of County Com'rs,* 194 F.Supp.2d 1154, 1168 (D.Kan. 2002) ("[u]nder Kansas law, personnel rules which are not bargained for cannot form an express or implied contract of employment as they are merely a unilateral

expression of 'company policy.' [Citation omitted.]"; *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976) (no meeting of the minds is evidenced by the defendant's unilateral act of publishing company policy.) This claim must therefore be dismissed.

### E. Negligent Supervision

Plaintiff's amended complaint alleges that Defendant breached its duty to Plaintiff to prevent its employees from acting in any way to harm him. Specifically, Plaintiff alleges that Defendant failed to adequately train Manager Carr to properly conduct an investigation and to conduct investigations in a non-discriminatory manner. Dk. 24, p. 20. Defendant counters that Kansas does not recognize any cause of action for a defendant's negligence in supervising a plaintiff's superior or preventing civil rights violations. Defendant is correct. In 1990, the Tenth Circuit found that Kansas would not recognize the common-law tort of negligent supervision under which an employer would be liable for negligent supervision of an employee's superior which allegedly allowed the superior to violate employee's civil rights. *Polson v. Davis*, 895 F.2d 705, 710 (10th Cir. 1990). *See Anspach v. Tomkins Industries, Inc.*, 817 F.Supp. 1499 (D.Kan. 1993); *Lawyer v. Eck & Eck Mach. Co., Inc.,* 197 F.Supp.2d 1267 (D.Kan. 2002) and cases cited therein. Although Kansas law recognizes the theory of negligent supervision in some circumstances, they are not present here. *See e.g., Nero v. Kansas State University,* 253 Kan. 567 (1993) (sexual assault);

*C.J.W. v. State,* 253 Kan. 1, 853 P.2d 4 (1993) (sexual assault). The Court is unaware of any change in Kansas law since 1990 that would enable Plaintiff to pursue this claim as a separate state law cause of action.

### F. Intentional Interference with Contract

Plaintiff additionally alleges that Wassel and Carr interfered with "a collective bargaining agreement for continued employment" between Defendant and Plaintiff. Wassel is alleged to have discriminated against Plaintiff in a grievance hearing, and Carr is alleged to have willfully conducted an inadequate investigation by not having a union steward present and by not providing written notification to the union, in violation of the terms of the CBA. Dk. 24, p. 20-22. These claims require the Court to interpret the terms of the CBA, so are preempted.

### G. § 301 Claim

Having found that Section 301 preempts Plaintiff's claims, the Court determines whether Plaintiff has stated a claim under that statute. Federal court review of allegations against employers for breach of collective bargaining agreements is appropriate only when an employee also alleges that the Union representing him breached its duty of fair representation. *See Young v. United Auto. Workers-Labor Employment & Training Corp.,* 95 F.3d 992, 996 (10th Cir. 1996). Here, Plaintiff admits (Dk. 28) that he is not claiming that his Union breached its duty of fair representation, which is an 'indispensable predicate' for the plaintiff's suit." *United Parcel Services, Inc.*

*v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). Even assuming all allegations in the complaint to be true, Plaintiff has failed to state a § 301 or hybrid claim upon which relief can be granted.

## VI. Conclusion

Amendment of any claims which are not properly exhausted, or are untimely, or not are cognizable under the relevant statute or decisional law would be futile. All claims but the following are dismissed: Plaintiff's § 1981 claim for racial termination; and Plaintiff's § 1981 and Title VII claims of racial harassment.

IT IS THEREFORE ORDERED that Defendant's motion to dismiss (Dk. 26) is granted in part and is denied in part in accordance with the terms of this memorandum.

Dated this 24th day of October, 2013, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge